# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> vs. <br><br> CHASE SMITH WALKER, <br> Defendant. | Case No. 25-cr-15-LTS <br><br> **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.     INTRODUCTION

On February 26, 2025, the Grand Jury returned an Indictment charging Defendant with one count of Possession of Ammunition by a Felon in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(8).  (Doc. 3.)

The matter before the Court is Defendant's Motion to Suppress.  (Doc. 31.)  The motion contained an inventory of evidence to be suppressed: ammunition (four types) found in Defendant's vehicle, a hypodermic needle found in the vehicle, "testimony of the officers concerning their observations of the physical items" found during the search of the vehicle and "testimony concerning . . . statements or admissions made by the Defendant during or following the search."  (*Id.*)  The Government timely filed a response.  (Doc. 40.)  The Honorable Leonard T. Strand, United States District Court Judge, referred the motion to me for a Report and Recommendation.  On August 26, 2025, I held a hearing on Defendant's motion to suppress.  (Doc. 42.)

At the hearing, the following Government exhibits were admitted without objection:

1.  Video from Officer Walden's body camera (Exhibit 1);

2. Video from Officer Walden's body camera (Exhibit 2); and

3. Defendant's criminal history (Exhibit 3).

Also at the hearing, the following defense exhibits were admitted without objection:

1. Meskwaki Nation Police Department reports (Exhibit A);

2. Search Warrant (Exhibit B);

3. Video from Officer Jones's body camera (Exhibits C, C-1, C-2, C-3);

4. Photographs of the vehicle (Exhibits D-I);

5. Meskwaki Nation PD seized property receipt (Exhibit J);

6. Meskwaki Nation PD property control receipt (Exhibit K);

7. Order from Iowa District Court for Tama County (Exhibit L);

8. Photographs of the vehicle (Exhibit M);

9. Photographs of the vehicle (Exhibit N); and

10. Meskwaki Nation PD procedures information (Exhibit M).

The Government called the following witness: Meskwaki Nation Police Department Officer Justin Walden. Defendant called the following witness: Michael Gorda. I found both witnesses credible.

For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II.    FINDINGS OF FACT

On October 6, 2023, at approximately 1:45 a.m., Officer Walden and his partner, Officer Nate Jones, conducted a traffic stop on Defendant's vehicle for failing to obey a stop sign and for speeding. On his initial interaction with Defendant, Officer Walden noted that Defendant refused to make eye contact with him and Defendant was slurring his speech. Officer Walden asked Defendant how much alcohol he had consumed that

night, and Defendant replied "none." (Doc. 39-1 at 8.) Officer Walden returned to his patrol car and ran Defendant's information.

Officer Walden approached Defendant's vehicle on the passenger side and spoke with Defendant about Defendant's driving at a high rate of speed. Based on Defendant's "odd" answers, lack of eye contact, slurred speech, and erratic driving, Officer Walden asked Defendant whether Defendant would be willing to perform field sobriety tests or take a breathalyzer test. (*Id.*) Defendant refused the tests. Officer Walden returned to his patrol vehicle to write citations for Defendant.

After writing the citations, Officer Walden returned to Defendant's vehicle. Officer Walden asked Defendant to exit the truck. Defendant refused to exit the vehicle and demanded a reason to do so. Eventually, Officer Walden told Defendant that he suspected Defendant of being under the influence and needed him to step out the vehicle. Defendant complied and exited the truck.

Outside the vehicle, Defendant again refused to perform field sobriety tests or take a breath test. Officer Walden placed Defendant under arrest for operating while intoxicated. Initially, Defendant refused to turn around and place his hands behind his back to be handcuffed. Defendant eventually acquiesced to Officer Walden's request and was taken to Officer Walden's patrol car. Officer Walden noted the odor of alcohol coming from Defendant's person. Defendant was transported to the Tama County Jail.

At the jail, Defendant refused to answer questions during the booking process, refused sobriety tests, and refused to permit officers to remove his handcuffs. Multiple law enforcement officers physically placed Defendant on the floor of a detention cell and removed Defendant's handcuffs at approximately 3:06 a.m.

While Officer Walden was writing up charges for Defendant, Officer Jones told Officer Walden that during the traffic stop, he observed a plastic baggie containing white

3

powder in Defendant's vehicle.[1]  (*Id.* at 10.)   At approximately 4:05 a.m., Officer Walden and Officer Jones returned to Defendant's vehicle on the side of the highway to further investigate.   Using their flashlights, Officer Walden and Officer Jones observed the baggie on the dashboard of Defendant's vehicle.   Officer Walden remarked multiple times that it was a baggie with white powder.   *See* Gov. Ex. 2 at 1:33 ("Bag of white powder"); 1:48-50 ("Definitely a bag of white powder"); 2:39-44 ("What I am concerned about is the baggie of white powder"); 4:23-24 ("Baggie of white powder"); 4:50-55 ("Well, he has a huge drug history and a baggie of white powder in there"); 7:54-59 ("I can see like white powdery crystalline substance from like right here").   During this investigation, the officers parked their patrol vehicle along the passenger side of Defendant's vehicle.   Officer Walden stood on the bumper of the patrol vehicle to gain a better vantage point, but he did not climb on Defendant's vehicle. The officers had the vehicle towed to the Meskwaki Nation Police Department while they obtained a search warrant for the truck.

On October 6, 2023, at approximately 11:15 p.m., Officer Walden obtained a search warrant for Defendant's vehicle.   The search warrant affidavit provided in pertinent part:

> On Friday, October 6, 2023, at 1:45 am, [Defendant] was . . . stopped for a traffic violation.   [Defendant] was exhibiting signs of impairment and ultimately placed under arrest for Operating While Intoxicated at 2:08 am. The truck's windows were rolled up and it was locked prior to heading to the jail.   The truck keys were brought to the jail.   After the arrest, Meskwaki Officer Jones notified me that during the time of the stop he noticed a plastic baggy [*sic*] on the dash that appeared to contain a white substance.

---

[1] In his report, Officer Jones noted that while Officer Walden was speaking with Defendant at the driver's side window before Defendant exited the vehicle and was placed under arrest, Officer Jones walked back to the passenger side of the vehicle and observed a baggie with residue of a white powdery substance lying on the dashboard.  (Doc. 39-1 at 12.)

4

After booking, Officer Jones and I (Officer Walden) drove back to the truck in the 1800 block of Highway 30 and looked into the windows. I noticed a clear zip lock baggy [*sic*] on the dash above the radio that appeared to have a white powder residue inside of it. Based on my training and experience, I know illegal narcotics are often kept in clear zip lock baggies. Furthermore, I am also aware illegal narcotics may come in different forms, shapes, and colors, including as a white powdery substance.

At around 5:14 am, The truck was towed from the 1800 block of Highway 30 back to the Meskwaki Nation Police Department's lot. The truck was sealed off with evidence tape and photographed.

[Defendant's] Criminal History reveals he has a history of drug possession, including a charge of "Dangerous Drug Controlled Substance Possession with Intent to Distribute" Felony conviction out of Colorado in 2015.

(Doc. 39-2 at 5.)

At approximately 11:30 p.m., law enforcement searched Defendant's vehicle. Among other things, officers found twenty-two boxes of 20 5.56X45mm ammunition rounds, an ammunition box containing 132 rounds of .223 ammunition, and four twenty-round boxes of 6.5 Creedmoor rounds and an additional four rounds. Officer Walden also noted that, after further inspection, the baggie with the white powdery substance located on the dashboard of Defendant's vehicle was determined not to be narcotics. (Doc. 39-1 at 11.)

Defendant was released from jail on October 6, 2023, at approximately 3:55 p.m., prior to the search of his vehicle. On October 14, 2023, Defendant went to the police department to retrieve his truck and was arrested on an active arrest warrant. (*Id.* at 14.)

Defendant's co-worker, Michael Gorda testified at the hearing. Mr. Gorda testified that he and Defendant worked on a crane crew and on October 5, 2023, they were in Iowa performing maintenance on wind towers. On the evening of October 5, 2023, Mr. Gorda and Defendant went to dinner and then to the casino, staying at the

5

casino until the "early morning." Mr. Gorda and Defendant left the casino at the same time, but Defendant had a head start because Mr. Gorda was tending to his dog. As he began to drive, Mr. Gorda called Defendant and learned Defendant was being pulled over. Mr. Gorda testified that he passed Defendant and took the next exit and found a place to park to wait and see what happened with Defendant. When law enforcement left the scene of the traffic stop, Mr. Gorda drove past Defendant's truck on the side of the road. Mr. Gorda called the police station regarding Defendant and learned that he would not be released until he appeared before a judge. Mr. Gorda asked if he could move Defendant's vehicle off the highway. After some time, Mr. Gorda was informed that he could move the vehicle. Mr. Gorda went to the truck but could not get into it. He called Defendant's girlfriend for the door code but when he returned, the truck had already been towed away.

## III. DISCUSSION

### A. The Parties' Arguments

Defendant argues that law enforcement lacked probable cause to seize his vehicle. Defendant asserts that the "mere presence of a white substance in a plastic bag—combined with admitted inexperience and lack of confirmation—is insufficient to 'warrant a person of reasonable caution' in believing that a crime had occurred or that the vehicle contained evidence of one." (Doc. 31-1 at 7.) (Quoting *Carroll v. United States*, 267 U.S. 132, 156 (1925)).

Relying on *United States v. Balser*, 560 F.Supp.3d 521 (D.N.H. 2020), Defendant argues that:

> Officer Jones told [Defendant] and [Mr. Gorda] that the vehicle would not be towed and that "It'll still be there tomorrow." *See* Exhibit C at 01:09:50-01:10:17 of the video. Yet hours later, without any new factual development, the officers seized and impounded the truck. During this time, [Defendant] had cursed and threatened the officers. The shift in conduct—paired with Jones's vague and untrained description of the

6

baggie—raises a serious question of Post Hoc justification. Officer waited over three hours after the arrest to seize the vehicle and did not obtain a search warrant until 18 hours later, despite having full control of the vehicle. This delay is inconsistent with the premise that immediate action was required under the automobile exception. If officers manufactured the need for seizure after telling the defendant the vehicle would remain in place—and if their probable cause was based on vague, color-based suspicion from an officer with no narcotics training—then their actions closely resemble the kind of manipulation of probable cause warned against by the court in *Balser*.

(Doc. 31-1 at 7.)

Defendant also argues that the "warrantless seizure of Defendant's vehicle was not justified under the plain view doctrine." (*Id.* at 8.) Defendant maintains that "[t]he uncertainty and admitted inexperience of Officer Jones undermines any claim that the incriminating nature of the baggie was obvious" and "[c]ourts have rejected pain view seizures under similar circumstances." (*Id.*) Defendant notes that officers did not decide to tow and impound the vehicle until "well after the arrest was complete, and without a warrant." (*Id.* at 9.) Defendant contends that when the vehicle was seized, "the officer had no lawful right of access to the vehicle: it was parked safely off the road, posed no apparent threat to public safety, and was under no legal authority for impoundment." (*Id.*) Defendant maintains that "even assuming the baggie provided some visual suspicion, officers lacked legal authority to physically seize and remove the entire vehicle from its location." (*Id.*)

The Government argues that "seizure of Defendant's vehicle was supported by probable cause." (Doc. 40-1 at 6.) The Government contends that given the totality of the circumstances, which included Defendant's signs of impairment, Defendant's criminal history (including convictions for driving under the influence of alcohol and drugs and for possession with intent to distribute a controlled substance), the clear baggie containing a white, powdery substance on the dashboard of Defendant's vehicle, and

7

Officer Walden's training and experience which led him to believe the baggie might contain and illegal narcotic, "a reasonable person could believe there is a fair probability that contraband or evidence of a crime—specifically, illegal narcotics—would be found in defendant's truck." (*Id.* at 8.)

Alternatively, the Government argues that "[e]ven if the Court finds that the search warrant affidavit lacked probable cause, the Court should find the *Leon* good-faith exception to the exclusionary rule applies." (*Id.* at 15.) Further, the Government argues that "even if the Court finds that the seizure of defendant's vehicle under the automobile exception to the warrant requirement was not supported by probable cause, the Court should still find that the *Leon* good-faith exception to the exclusionary rule applies." (*Id.* at 16.) The Government maintains that "the officers reasonably believed that their seizure under the automobile exception was valid, and they relied upon a warrant for the subsequent search" and "[g]iven that the officers pre-warrant conduct was 'close enough to the line of validity,' the *Leon* good-faith exception would apply." (*Id.* at 19.)

## B.    *Relevant Law*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Courts have long recognized the "automobile exception" to the Fourth Amendment. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003); *see generally Carroll v. United States*, 267 U.S. 132, 158-59 (1925). This Court has addressed the automobile exception as follows:

> The exception was originally justified by the "practical challenges of obtaining a warrant for a vehicle that could be 'quickly moved' out of the jurisdiction." *United States v. Blaylock*, 535 F.3d 922, 926 (8th Cir. 2008) (quoting *Carroll v. United States*, 267 U.S. 132, 153 (1925)). "This is strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove the evidence from official grasp is heightened." *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974). The

8

> "ready mobility" of an automobile which justifies dispensing with the warrant requirement refers not merely to the immediacy with which a vehicle may be moved, but to the possibility that it could be moved at all—what the Court calls "inherent mobility."

*United States v. Maccani*, 526 F.Supp.3d 420, 448 (N.D. Iowa 2021). Thus, the automobile exception to the warrant requirement "permits the warrantless . . . seizure of a vehicle by officers possessing probable cause to do so." *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) (citing *Chambers v. Maroney*, 399 U.S. 42, 50–51 (1970)).

Likewise, when probable cause exists to search a vehicle, "the opportunity to search is fleeting since a car is readily movable," therefore, "if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." *Chambers*, 399 U.S. at 50–51; *see also United States v. Sims*, 424 F.3d 691, 693 (8th Cir. 2005) ("[A]n automobile may be seized without a warrant under the 'automobile exception' to the warrant requirement.").

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003) (quoting *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000)). Because "[p]robable cause is a practical and common-sensical standard," officers may draw inferences from the evidence based on their own experiences as to whether probable cause exists. *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (internal quotation marks and citations omitted). "Probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Donnelly,* 475

9

F.3d 946, 954 (8th Cir. 2007) (quoting *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001)) (internal ellipses omitted). The Government bears the burden of establishing that the automobile exception applies to the warrantless seizure of the vehicle. *See United States v. Kennedy,* 427 F.3d 1136, 1140 (8th Cir. 2005) (noting the government bears the burden of establishing an exception to the warrant requirement).

## C. *Application*

### 1. *Seizure of the vehicle*

#### a. *The existence of probable cause.*

Here, law enforcement had probable cause to seize Defendant's vehicle. First, Defendant was arrested for suspicion of driving under the influence. Despite Defendant's refusal to take breath tests or filed sobriety tests, Officers observed signs of Defendant being impaired both at the side of the road and at the police station. Second, Officer Walden reviewed Defendant's criminal history which revealed that Defendant had a previous conviction for driving under the influence in Pennsylvania in 2012. Defendant also had a felony drug conviction in Colorado, which Defendant admitted and discussed with officers. (Gov. Ex. 1 at 48:13-49:14, 53:31-54:07, 1:05:00-1:09:02; Gov. Ex. 3.) Third, Officer Walden and Officer Jones both observed a clear baggie containing a white, powdery substance on the dashboard of Defendant's vehicle. Based on his training and experience, Officer Walden believed that the contents of the baggie might be an illegal narcotic. Considering the totality of the circumstances, I find that a reasonable person could conclude that there was a fair probability that contraband or evidence of a crime would be found in Defendant's vehicle. *See Wells*, 347 F.3d at 287. Accordingly, I find that law enforcement had probable cause to search Defendant's vehicle and, therefore, authority to seize pending receipt of a search warrant under *Sims*.

Defendant argues that the "mere presence of a white substance in a plastic bag—combined with admitted inexperience and lack of confirmation—is insufficient" to find

10

probable cause. (Doc. 31-1 at 7.) Defendant's argument lacks merit. First, while Officer Jones admitted his inexperience with narcotics investigations, he reported his observation of the baggie containing a white powdery substance to Officer Walden, who does have training and experience in drug investigations. Second, based on his training and experience, Officer Walden believed that the white powdery substance contained in the baggie could be an illegal narcotic. Third, probable cause does not require confirmation. *See Donnelly,* 475 F.3d at 954 ("Probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime."). Thus, based on the totality of the circumstances, the officers had probable cause to seize Defendant's vehicle.

Additionally, Defendant's reliance on *United States v. Balser*, 560 F.Supp.3d 521 (D.N.H. 2020) is misplaced. Defendant emphasizes the following quotation from *Balser*, "The court finds [the] statements [of the officer who stopped Balser] unreliable. First, [officer]'s credibility is undermined by his willingness to manufacture probable cause for the seizure of Balser's car beyond the initial traffic stop." *Id*. at 530. Defendant takes this statement as an invitation to attempt to undermine the credibility of Officers Jones and Walden to show they manufactured probable cause. For the reasons discussed below, *Balser* is entirely distinguishable. I pause here, however, to note that Defendant failed to establish facts that would support this theory. At the hearing, Defendant attempted to show the officers were so upset with Defendant's bad behavior (in addition to the lack of cooperation listed above, he employed at least one racial slur in his communication with officers) that they manufactured probable cause. In the video, the officers do not appear to be fazed at all by Defendant's behavior. Moreover, the fact that the officers actually recovered a baggie with white powder from the dashboard (rather than a volleyball or a bag of Fritos, for example) frustrates Defendant's efforts to undermine the legitimacy of probable cause.

Furthermore, *Balser* involved a Drug Enforcement Agency ("DEA") drug investigation, including the use of wire taps and surveillance. At some point, DEA investigators intercepted messages suggesting a drug transaction was going to occur at a residence under surveillance. Based on the DEA's observations of what it believed was a drug transaction, a DEA agent requested a uniformed police officer in a marked patrol car stop a vehicle the DEA believed contained drugs. Specifically, the DEA agent told the police officer:

> that there was a white four-door car with Vermont license plates that the DEA needed [the police officer] to stop because the car "had drugs in it." [The DEA agent] told [the police officer] that the car had been in Lawrence where the driver had likely completed a drug transaction, that the car was headed north on Interstate 93, and that [the DEA] believed there were drugs inside the car. [The DEA agent] did not reference Balser's text messages specifically, but he told [the police officer] that this information was based on a wiretap from an ongoing DEA investigation. [The DEA agent] testified that [the police officer] already knew about the wiretap because they had previously spoken about the ongoing investigation.

> [The DEA agent] asked [the police officer] to find a motor vehicle violation before stopping the car and told him to conduct a "wall-off stop," noting that [the police officer] should "try and develop his own probable cause" to search or seek a search warrant.

*Balser*, 560 F.Supp.3d at 524-525. The police officer stopped the car for "traveling too close to the vehicle in front of it during Friday rush hour traffic." *Id*. At 525. The police officer believed he had probable cause to seize the vehicle based on the following: "Balser had not taken the most direct route from Massachusetts to Vermont; he appeared nervous; his cellphone repeatedly rang but he did not answer it; and a small piece of cotton was on the driver's side rear floorboard." *Id*. The police officer obtained a warrant to search the car, and drugs were found inside the vehicle.

Balser moved to suppress the evidence obtained from the warrantless seizure of his vehicle. Regarding the probable cause developed by the officer who stopped Balser, the court concluded:

> The court finds DiChiara's statements unreliable. First, DiChiara's credibility is undermined by his willingness to manufacture probable cause for the seizure of Balser's car beyond the initial traffic stop. DiChiara's reasons for seizing Balser's car—Balser's route of travel, his nervousness, the ringing cellphone, and the piece of cotton in the car—are plainly insufficient to support the continued seizure of the car. Second, DiChiara was not forthcoming in his police reports. DiChiara seized Balser's car because Turner told him that it likely contained drugs, but DiChiara neglected to acknowledge any communication with Turner in his initial report.

*Id.* at 613. *Balser* thus rejected the probable cause for the seizure "developed" at the request of another law enforcement officer and turned to the collective knowledge doctrine.

The government argued that:

> the post-traffic-stop seizure of Balser and his car was justified because [the DEA agent] had probable cause that the vehicle contained illegal drugs, and that [the DEA agent's] probable cause is imputed to [the police officer] under the collective knowledge doctrine. The government concedes that [the police officer's] personal observations (i.e., Balser's supposed indirect route of travel, his nervous demeanor, his ringing cellphone, and the piece of cotton on the car's floorboard) are insufficient to establish probable cause that Balser was transporting contraband.

*Id.* at 526. The district court observed that "[t]his case therefore hinges on the applicability of the collective knowledge doctrine." *Id.* Ultimately, the district court denied the motion to suppress because the DEA agent's "probable cause was imputed to [the police officer] through the collective knowledge doctrine, and [the police officer] therefore had probable cause to seize and search [Balser's] car." *Id.* at 530.

13

*Balser* is easily distinguished from the present case. A review of *Balser* demonstrates no similarities between it and the facts underlying this case. For example, Defendant was not under surveillance for drug trafficking. Indeed, law enforcement in this case was not working with another agency and was not requested to stop Defendant's vehicle and find probable cause to seize it. Here, officers conducted a traffic stop on Defendant's vehicle for failing to obey a stop sign and for speeding. Moreover, this is a collective knowledge doctrine case only in the sense that Officers Jones and Walden pooled their knowledge to meet the probable cause standard. A process *Balser* referred to as "horizontal" collective knowledge. *Id.* at 527. Officers Walden and Jones developed probable cause based on their own observations, training, experience, and other information known about Defendant. *Balser* turned on the application of the "vertical" collective knowledge doctrine, i.e., where one officer has developed probable cause and directs another to act upon it. *Id.* It is evident from the dissimilarities that *Balser* is not applicable in this case. To the extent *Balser* is at all applicable, Defendant has failed to show any more than speculation about the officers' alleged efforts to "manufacture" probable cause.

### b. *Defendant's plain view argument.*

The Eighth Circuit Court of Appeals has explained that "[u]nder the plain-view doctrine, officers may seize any contraband so long as 'they are lawfully present in a place to view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object.'" *United States v. Winder*, 97 F.4th 1103, 1108 (8th Cir. 2024) (quoting *United States v. Hayes*, 75 F.4th 925, 928 (8th Cir. 2023)). Defendant argues that the incriminating nature of the baggie on the dashboard was not "immediately apparent," in part, because Officer Jones reaction to it was not immediate.

14

This is not the typical plain-view doctrine case, as the officers did not immediately search the vehicle based on observing the baggie containing a white powdery substance on the dashboard of Defendant's vehicle or seize the baggie. *See United States v. Dunn*, 928 F.3d 688, 693 (8th Cir. 2019) ("If an officer views contraband in plain sight through an automobile's window, he [or she] has probable cause to search that vehicle."). (Citing *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000)). Instead, the officers seized the vehicle and applied for a warrant to search it. Nevertheless, the plain-view doctrine is implicated here since the officers' probable cause to seize the vehicle was in part based on their plain view of the baggie containing a white powdery substance on the vehicle's dashboard.

Here, during the traffic stop while other officers were speaking with Defendant, Officer Jones was at the passenger side of the vehicle and "noticed a plastic baggie of what appeared to have some residue of a white powdery substance on the dashboard." (Doc. 39-1 at 12.) Officer Jones did not mention the baggie to the other officers until after Defendant had been arrested and secured at the jail. (*Id.*) After reporting his observation to Officer Walden, Officer Jones and Officer Walden returned to Defendant's vehicle which was parked on the side of the highway. This time, both officers observed the baggie in plain view on the dashboard and seized the vehicle, having it towed to the police station. (*Id.* at 10, 12.)

Officer Jones was lawfully standing at the passenger side of the vehicle during the traffic stop. Both Officer Jones and Officer Walden were lawfully in proximity to the vehicle when they returned to it after taking Defendant to jail, as the vehicle was parked on the side of the highway. Furthermore, Officers Walden and Jones did not violate the Fourth Amendment by using their flashlights to look inside the window of Defendant's vehicle. *See United States v. Bynum*, 508 F.3d 1134, 1137 (8th Cir. 2007) ("Neither probable cause nor reasonable suspicion is necessary for an officer to look through a

15

window (or open door) of a vehicle so long as he or she has a right to be in close proximity to the vehicle" and "[t]he act of looking through a car window is not a search for Fourth Amendment purposes because "a person who parks a car—which necessarily has transparent windows—on private property does not have a reasonable expectation of privacy in the visible interior of his car") (citing *United States v. Beatty*, 170 F.3d 811, 814 (8th Cir.1999) and quoting *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir.1995)); *United States v. Evans*, 830 F.3d 761, 767 (8th Cir. 2016) (providing that an officer who is lawfully present in the area where a vehicle is located may shine his or her "'flashlight to illuminate the interior'" of a defendant's car and has "'trenched upon no right secured to the latter by the Fourth Amendment'") (quoting *Texas v. Brown*, 460 U.S. 730, 739-40 (1983)). Officer Walden, after observing the baggie, concluded that, based on his experience and training, the baggie could contain an illegal narcotic. (Doc. 39-1 at 10.) Thus, the "immediately apparent" requirement was met. *See Hatten*, 68 F.3d at 261 ("The 'immediately apparent' requirement means that officers must have 'probable cause to associate the property with criminal activity.'). (Quoting *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990)). Defendant's vehicle was not seized based merely on Officer Jones's less-experienced initial observation of the baggie. Indeed, Defendant's vehicle was not seized at all until after both officers returned to the truck and combined their experience and observations.

Additionally, as discussed above, confirmation or certainty that the contents of the baggie were narcotics is not the standard. "Probable cause demands not that an officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious man would warrant a belief 'that certain items may be contraband or stolen property or useful as evidence of a crime.'" *Id*. (quoting *Garner*, 907 F.2d at 62, in turn quoting *Brown*, 460 U.S. at 742). I conclude that the incriminating nature of the baggie was, in fact immediately apparent to Officer Jones, even if he did not call it to Officer Walden's more

16

expert attention until somewhat later. The incriminating nature of the white, powdery substance was immediately apparent to Officer Walden after he observed it through the window and compared it Officer Jones's observation. Thus, the incriminating nature of the baggie was immediately apparent before the vehicle was seized.

The other aspect of Defendant's "plain view" argument is that law enforcement did not have the right to "access" the interior of the vehicle at the time they made their observation of it. Defendant relies on a decision from the Southern District of Florida which states:

> [T]he doctrine of plain view, [ ] permits the warrantless seizure of an item where "(1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)).

*United States v. Ibanez-Molina*, 759 F. Supp. 3d 1272, 1298 (S.D. Fla. 2024). This is consistent with the Eighth Circuit's holding, "It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating nature is immediately apparent, and the officer has a lawful right of access to the object." *United States v. Bustos–Torres,* 396 F.3d 935, 944 (8th Cir.2005).

> Privacy rights protected by the Fourth Amendment prevent officers from entering private property to seize contraband that can be seen in plain view from outside the property, no matter how incriminating the contraband, *see Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality) (stating that even "[i]ncontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect" does not allow officers to enter the premises and seize the object), unless the officers have a prior justification for being on the property, see Brown, 460 U.S. at 738, 103 S.Ct. 1535 ("'[P]lain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment."). "The theory

> of [the plain view] doctrine consists of extending to nonpublic places such
> as the home, where searches and seizures without a warrant are
> presumptively unreasonable, the police's longstanding authority to make
> warrantless seizures in public places of such objects as weapons and
> contraband." Hicks, 480 U.S. at 326–27, 107 S.Ct. 1149. "'Plain view'
> is perhaps better understood, therefore, not as an independent 'exception'
> to the warrant clause, but simply as an extension of whatever the prior
> justification for an officer's 'access to an object' may be." *Brown*, 460
> U.S. at 738-39, 103 S.Ct. 1535.

*PPS, Inc. v. Faulkner Cnty., Ark.*, 630 F.3d 1098, 1103 (8th Cir. 2011). Here, the prior justification for Officer Jones presence at the passenger door when he first viewed the baggie is unquestionable. Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). "We believe that Mr. Gillon was properly stopped on a public road for a traffic violation and thus the police were lawfully in close proximity to the vehicle, and that once the officers viewed what appeared to be bags containing crack cocaine they had a right of access to the passenger compartment of the car, *see United States v. Beatty*, 170 F.3d 811, 814 (8th Cir.1999)." *United States v. Gillon*, 348 F.3d 755, 759 (8th Cir. 2003). Here, the officers saw what appeared to be contraband on the dashboard. Under *Beatty* they were authorized to seize it. Here, however, they sought a warrant based on their perception of the alleged contraband in plain view and properly seized the vehicle in order to effectuate that warrant. There is no separate requirement, as Defendant appears to imply, that officers have some other access to the interior of the vehicle before relying on their observations to conduct a search of the vehicle or seize it for purposes of obtaining and effecting a warrant.

18

Accordingly, I find that the seizure of Defendant's vehicle was not in violation of the Fourth Amendment and recommend that the motion to suppress be denied.

### 2. *Franks Hearing*

In the motion, Defendant asserts:

> It is believed that a determination of probable cause that was made by the Magistrate was based on information authored either intentionally and knowingly, or with reckless disregard for the truth by officers signing the application and affidavits for the search warrants. That said false or information offered with reckless disregard for the truth was necessary to any finding of probable cause by the Magistrate. A hearing is necessary to determine the validity of said search warrant absent any and all false or recklessly offered information.

(Doc. 31 at 2.) However, nowhere in his motion or brief does Defendant mention *Franks v. Delaware*, 438 U.S. 154 (1978), request a *Franks* hearing, or argue that he is entitled to a *Franks* hearing. At the suppression hearing, in relation to the *Franks* issue, Defendant's counsel offered the following:

> We are mainly focused on two concerns, I think. One is the initial probable cause to seize the motor vehicle and prevent my client from being able to obtain that vehicle later on when he was released. He also had another individual, who will be testifying, who was in the process of securing that vehicle before any search warrant was ever applied for. Okay. The other thing is the delay in actually looking and obtaining a search warrant. So I think all of this is really pretty preliminary to the search warrant process. There may be a couple of questions that I would offer that relate to the search warrant process. Those relate to some of the motives or interests, perhaps, the officers had in doing what they did that day.

(Hr'g Tr. at 3-4.) Both at the suppression hearing and in its briefing, the Government argues that Defendant is not entitled to a *Franks* hearing. At the suppression hearing, I concluded that defendant is not entitled to a *Franks* hearing. (*Id.* at 5.)

For clarity, I will briefly address the *Franks* issue. Under *Franks v. Delaware*, 438 U.S. 154 (1978), an affidavit in support of a search warrant is presumed valid. *Id.*

at 171; *see also United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022); *United States v. Hollis*, 245 F.3d 671, 673 (8th Cir. 2001). A defendant is entitled to a hearing under *Franks* when he or she "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56; *see also United States v. Hansen*, 27 F.4th 634, 637 (8th Cir. 2022) ("To receive a *Franks* hearing, 'a defendant must make a substantial preliminary showing that there was an intentional or reckless' omission from a warrant affidavit that 'was necessary to the finding of probable cause.'") (Quoting *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008)). "This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements." *Hansen*, 27 F.4th at 637 (quoting *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015)). Indeed, "[a] mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *United States v. Short*, 2 F.4th 1076, 1080 (8th Cir. 2021) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

To make a showing of reckless disregard for the truth, the defendant must show that the affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information" he reported. *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (quoting *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015)). "Recklessness can be inferred from [an] omission 'when the material omitted would have been clearly critical to the finding of probable cause.'" *Id*. (quoting *Conant*, 799 F.3d at 1200). If the defendant fails to make "a 'strong initial showing' of deliberate falsehood or reckless disregard for the truth," a *Franks* hearing

"must be denied." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quoting *United States v. Pennington*, 287 F.3d 739, 743 (8th Cir. 2002)).

Defendant has failed to make any showing, let alone the necessary "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. Defendant's conclusory allegation falls far short of the requisite showing under *Franks*. *See Hansen*, 27 F.4th at 637; *Short*, 2 F.4th at 1080. Accordingly, I find that Defendant has not made the necessary showing entitling him to a *Franks* hearing and to the extent Defendant is requesting a *Franks* hearing, it is denied.

### 3. *The good faith exception under* Leon

#### a. *Relevant law*

Under the good faith exception articulated in *United States v. Leon*, even if a reviewing court determines substantial evidence to issue a warrant is absent, the court should not suppress evidence seized pursuant to the search warrant if the officers executing the search warrant acted in objectively reasonable reliance on the issuance of the warrant by a neutral magistrate or judge. 468 U.S. 897, 922 (1984); *United States v. Houston*, 665 F.3d 991, 994-95 (8th Cir. 2012). "In making this determination, we ask 'whether a reasonably well-trained officer would have known that the search was illegal despite a judge's issuance of the warrant.'" *United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)).

Under the "good-faith exception," if a law enforcement officer's reliance on a warrant was objectively reasonable, the evidence seized pursuant to an invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007).

*Proell* noted that *Leon* identified four scenarios where it is not objectively reasonable for the executing officer to rely on a warrant issued by a magistrate:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Id.* at 431 (citing *Leon*, 468 U.S. at 923; *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)).

*Leon* explained that "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a judge normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." 468 U.S. at 922 (quotations omitted). Nevertheless, "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 922-23 (footnote omitted). "For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, [law enforcement's] prewarrant conduct must have been 'close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable.'" *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013) (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)). If the prewarrant conduct is clearly illegal, however, the exception does not apply. *Cannon*, 127 F.3d at 413.

### b. Application

None of the four scenarios contemplated by *Leon* apply here. Indeed, there is no allegation or evidence that the affidavit in support of the search warrant contained any false statements or that the issuing magistrate judge was misled in any way. There is no

allegation or evidence that the issuing magistrate judge "wholly abandoned" their judicial role in issuing the search warrant. The probable cause basis for seizing Defendant vehicle was virtually identical to the probable cause basis outlined in Officer Walden's affidavit in support of the application for the search warrant for Defendant's truck. As such, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Proell*, 485 F.3d at 431. Indeed, the warrant application provides that Officer Walden observed a baggie containing a white powdery substance on Defendant's dashboard, Officer Walden knew that based on Defendant's criminal history that Defendant had possessed drugs in the past, and based on his training and experience Officer Walden believed that the contents of the baggie could be an illegal narcotic and was consistent with drug packaging. Finally, there is no allegation or evidence that the warrant is "so facially deficient" that a police officer could not reasonably presume that the warrant was valid.

Moreover, as discussed above, I find that the seizure of Defendant's vehicle was legal, and Officers Walden and Jones had probable cause to seize it. Nothing on this record shows that any of Officer Walden's and Officer Jones's conduct related to the seizure of Defendant's vehicle was "clearly illegal." Instead, the record shows that the seizure of the vehicle never strayed from, or far from, the line of validity. *See Cannon*, 127 F.3d at 413. Thus, I find that Officer Walden's and Officer Jones's conduct was close enough to the line of validity to justify law enforcement's belief that the search warrant was objectively reasonable. *See id*. Accordingly, as an alternative, I recommend that Defendant's motion to suppress be denied under the *Leon* good faith exception.

### 4.   *Defendant's Statements*

Defendant's motion makes a passing reference to suppression of "alleged statements or admission made by the Defendant during or following the search." Evidence obtained as a result of an unconstitutional search or seizure must be suppressed

as well as any evidence later discovered to be an illegal "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). "Any evidence secured through an unreasonable, hence illegal, search and seizure may not be used in a federal prosecution, nor may the fruit of such tainted evidence be admitted against the defendant whose privacy rights were originally violated." *United States v. Conner*, 948 F. Supp. 821, 829 (N.D. Iowa 1996) (citing *Weeks v. United States*, 232 U.S. 383 (1914); *Wong Sun*, 371 U.S. at 484-88). Here, presumably, Defendant seeks to suppress statements by the officers and by Defendant as "fruit of the poisonous tree." However, there are multiple difficulties with this presumption. First, as discussed above, I find that law enforcement had probable cause to seize Defendant's vehicle. Second, Defendant offers no specificity as to any statement or statements that he believes should be suppressed. While there is some record of what Defendant said during law enforcement's investigation, arrest, and booking of Defendant, the record is essentially silent regarding any statements he made "during or following the search." Third, neither Defendant's motion nor his brief address the suppression of any statements or the "fruit of the poisonous tree" doctrine. Thus, there is no poisonous tree and no poison fruit. Fourth, Defendant has failed to meet the requirement of demonstrating a sufficient factual nexus between the constitutional violation and the challenged evidence. *See United States v. Yorgensen*, 845 F.3d 908, 913 (8th Cir. 2017) (citation omitted). Indeed, Defendant has not addressed this issue and has shown no nexus between the constitutional violation and challenged evidence, as Defendant has not even specified what the challenged evidence is. Accordingly, I recommend that Defendant's request to have statements that he made or statements that officers made suppressed be denied regardless of whether the Court agrees with me regarding the existence of probable cause to seize the vehicle.

**5.      *Exigent Circumstances and Community Caretaking are not Applicable***

Defendant argues that the seizure cannot be justified by the exigent circumstances or community caretaking exceptions to the warrant requirement.  Relying solely on the existence of probable cause, the Government concedes these exceptions are inapplicable.  At the hearing, the Government affirmed to me that it was not relying on the exigent circumstances or community caretaking doctrines to support the seizure of Defendant's vehicle.  Also, the Government did not address these doctrines in its resistance brief.  Therefore, I will conclude those doctrines do not support the seizure of the truck and not address Defendant's arguments with regard to the exigent circumstances or community caretaking doctrines.  *See* Hr'g Tr. at 5-6.  Therefore, if the Court concludes that the seizure was not supported by probable cause and cannot be supported under the *Leon* good faith doctrine, it should conclude that the search is not justified by exigent circumstances and community caretaking.

## IV.      CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Suppress.  **(Doc. 31.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Crim. P. 59.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to

appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

      **DONE AND ENTERED** at Cedar Rapids, Iowa, this 11th day of September, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa