# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHASE SMITH WALKER,<br><br>Defendant. | No. CR25-15-LTS-MAR<br><br>MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION |

This matter is before me on a Report and Recommendation (R&R) (Doc. 44) in which the Honorable Mark A. Roberts, United States Magistrate Judge, recommends that I deny defendant Chase Walker's motion (Doc. 31) to suppress evidence. Walker has filed objections (Doc. 50).

## I.  BACKGROUND

Walker is charged in an indictment (Doc. 3) with one count of possession of ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). He seeks the exclusion of evidence obtained after an encounter with law enforcement officers on October 6, 2023. The Government resists. Doc. 40.

Judge Roberts held an evidentiary hearing on August 26, 2025. Doc. 42. The Government called Officer Justin Walden with the Meskwaki Nation Police Department. Doc. 42. Walker called Michael Gorda. *Id.* Judge Roberts also admitted the following exhibits:

- Videos from Walden's body camera (Government Exhibits 1 and 2)
- Walker's criminal history (Government Exhibit 3)
- Meskwaki Nation PD reports (Defense Exhibits A1-A10)
- Search warrant (Defense Exhibits B1-B15)

- Videos from body camera of Officer Jones (Defense Exhibits C-C3)
- Photographs of vehicle (Defense Exhibits D-I)
- Meskwaki Nation PD seized property receipt (Defense Exhibit J)
- Meskwaki Nation property control receipt (Defense Exhibit K)
- Iowa District Court for Tama County order (Defense Exhibit L)
- Photographs of vehicle (Defense Exhibits M1-M7)
- Photographs of vehicle (Defense Exhibits N1-N5)
- Meskwaki Nation PD information (Defense Exhibits O1-O3)

*Id.* Judge Roberts issued his R&R (Doc. 44) on September 11, 2025, and Walker filed his objections (Doc. 50) on October 1, 2025. Trial is scheduled to begin on December 15, 2025.

## II. THE R&R

### A. *Findings of Fact*

Judge Roberts made the following findings of fact:

On October 6, 2023, at approximately 1:45 a.m., Officer Walden and his partner, Officer Nate Jones, conducted a traffic stop on Defendant's vehicle for failing to obey a stop sign and for speeding. On his initial interaction with Defendant, Officer Walden noted that Defendant refused to make eye contact with him and Defendant was slurring his speech. Officer Walden asked Defendant how much alcohol he had consumed that night, and Defendant replied "none." (Doc. 39-1 at 8.) Officer Walden returned to his patrol car and ran Defendant's information.

Officer Walden approached Defendant's vehicle on the passenger side and spoke with Defendant about Defendant's driving at a high rate of speed. Based on Defendant's "odd" answers, lack of eye contact, slurred speech, and erratic driving, Officer Walden asked Defendant whether Defendant would be willing to perform field sobriety tests or take a breathalyzer test. (*Id.*) Defendant refused the tests. Officer Walden returned to his patrol vehicle to write citations for Defendant.

After writing the citations, Officer Walden returned to Defendant's vehicle. Officer Walden asked Defendant to exit the truck. Defendant refused to exit the vehicle and demanded a reason to do so. Eventually, Officer Walden told Defendant that he suspected Defendant of being under the influence and needed him to step out the vehicle. Defendant complied and exited the truck.

Outside the vehicle, Defendant again refused to perform field sobriety tests or take a breath test. Officer Walden placed Defendant under arrest for operating while intoxicated. Initially, Defendant refused to turn around and place his hands behind his back to be handcuffed. Defendant eventually acquiesced to Officer Walden's request and was taken to Officer Walden's patrol car. Officer Walden noted the odor of alcohol coming from Defendant's person. Defendant was transported to Tama County Jail.

At the jail, Defendant refused to answer questions during the booking process, refused sobriety tests, and refused to permit officers to remove his handcuffs. Multiple law enforcement officers physically placed Defendant on the floor of a detention cell and removed Defendant's handcuffs at approximately 3:06 a.m.

While Officer Walden was writing up charges for Defendant, Officer Jones told Officer Walden that during the traffic stop, he observed a plastic baggie containing white powder in Defendant's vehicle. (*Id.* at 10.) At approximately 4:05 a.m., Officer Walden and Officer Jones returned to Defendant's vehicle on the side of the highway to further investigate. Using their flashlights, Officer Walden and Officer Jones observed the baggie on the dashboard of Defendant's vehicle. Officer Walden remarked multiple times that it was a baggie with white powder. *See* Gov. Ex. 2 at 1:33 ("Bag of white powder"); 1:48-50 ("Definitely a bag of white powder"); 2:39-44 ("What I am concerned about is the baggie of white powder"); 4:23-24 ("Baggie of white powder"); 4:50-55 ("Well, he has a huge drug history and a baggie of white powder in there"); 7:54-59 ("I can see like white powdery crystalline substance from like right here"). During this investigation, the officers parked their patrol vehicle along the passenger side of Defendant's vehicle. Officer Walden stood on the bumper of the patrol vehicle to gain a better vantage point, but he did not climb on Defendant's vehicle. The officers had the vehicle towed to the Meskwaki Nation Police Department while they obtained a search warrant for the truck.

3

On October 6, 2023, at approximately 11:15 p.m., Officer Walden obtained a search warrant for Defendant's vehicle. The search warrant affidavit provided in pertinent part:

> On Friday, October 6, 2023, at 1:45 am, [Defendant] was . . . stopped for a traffic violation. [Defendant] was exhibiting signs of impairment and ultimately placed under arrest for Operating While Intoxicated at 2:08 am. The truck's windows were rolled up and it was locked prior to heading to the jail. The truck keys were brought to the jail. After the arrest, Meskwaki Officer Jones notified me that during the time of the stop he noticed a plastic baggy [*sic*] on the dash that appeared to contain a white substance.
>
> After booking, Officer Jones and I (Officer Walden) drove back to the truck in the 1800 block of Highway 30 and looked into the windows. I noticed a clear zip lock baggy [*sic*] on the dash above the radio that appeared to have a white powder residue inside of it. Based on my training and experience, I know illegal narcotics are often kept in clear zip lock baggies. Furthermore, I am also aware illegal narcotics may come in different forms, shapes, and colors, including as a white powdery substance.
>
> At around 5:14 am, The truck was towed from the 1800 block of Highway 30 back to the Meskwaki Nation Police Department's lot. The truck was sealed off with evidence tape and photographed.
>
> [Defendant's] Criminal History reveals he has a history of drug possession, including a charge of "Dangerous Drug Controlled Substance Possession with Intent to Distribute" Felony conviction out of Colorado in 2015.

(Doc. 39-2 at 5.)

At approximately 11:30 p.m., law enforcement searched Defendant's vehicle. Among other things, officers found twenty-two boxes of 20 5.56X45mm ammunition rounds, an ammunition box containing 132 rounds of .223 ammunition, and four twenty-round boxes of 6.5 Creedmoor rounds and an additional four rounds. Officer Walden also noted that, after

4

further inspection, the baggie with the white powdery substance located on the dashboard of Defendant's vehicle was determined not to be narcotics.[1] (Doc. 39-1 at 11.)

Defendant was released from jail on October 6, 2023, at approximately 3:55 p.m., prior to the search of his vehicle. On October 14, 2023, Defendant went to the police department to retrieve his truck and was arrested on an active arrest warrant. (*Id.* at 14.)

Defendant's co-worker, Michael Gorda testified at the hearing. Mr. Gorda testified that he and Defendant worked on a crane crew and on October 5, 2023, they were in Iowa performing maintenance on wind towers. On the evening of October 5, 2023, Mr. Gorda and Defendant went to dinner and then to the casino, staying at the casino until the "early morning." Mr. Gorda and Defendant left the casino at the same time, but Defendant had a head start because Mr. Gorda was tending to his dog. As he began to drive, Mr. Gorda called Defendant and learned Defendant was being pulled over. Mr. Gorda testified that he passed Defendant and took the next exit and found a place to park to wait and see what happened with Defendant. When law enforcement left the scene of the traffic stop, Mr. Gorda drove past Defendant's truck on the side of the road. Mr. Gorda called the police station regarding Defendant and learned that he would not be released until he appeared before a judge. Mr. Gorda asked if he could move Defendant's vehicle off the highway. After some time, Mr. Gorda was informed that he could move the vehicle. Mr. Gorda went to the truck but could not get into it. He called Defendant's girlfriend for the door code but when he returned, the truck had already been towed away.

Doc. 44 at 2-6 (footnotes omitted).

### B. The Parties' Arguments

Walker argues the officers seized his vehicle without probable cause and the subsequent search warrant was also flawed because (1) it was based on information authored either intentionally and knowingly, or with reckless disregard for the truth by officers signing the application and affidavits for the search warrants and (2) lacked

---

[1] Walker objects to this finding of fact, stating the baggie was reported to contain plastic clips with white powder residue. Doc. 50 at 2.

evidence of an articulable basis that criminal activity was occurring or had occurred in Walker's vehicle.

The Government argues the officers had probable cause to seize the truck pursuant to the automobile exception to the warrant requirement. It also contends the search warrant was supported by the same probable cause and that even if the court finds probable cause was lacking, it should find the *Leon*[2] good faith exception to the exclusionary rule applies.

## C. Recommendation

Judge Roberts recommends denying Walker's motion to suppress. He concluded there was probable cause to seize Walker's vehicle based on officers' observations of signs of impairment, Walker's criminal history and officers' observations of a clear baggie containing a white powdery substance on the dashboard of Walker's vehicle. He also determined that a *Franks*[3] hearing was not required because Walker had failed to make any showing that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. Judge Roberts concluded that the seizure of Walker's vehicle would also fall under the *Leon* good faith exception but that the search was not justified by exigent circumstances or community caretaking. Finally, to the extent that Walker sought to suppress any statements or admissions he made during or after the search, Judge Roberts recommends denying that aspect of the motion. *See* Doc. 44.

---

[2] *See United States v. Leon*, 468 U.S. 897, 922 (1984).

[3] *See Franks v. Delaware*, 438 U.S. 154 (1978).

6

Case 1:25-cr-00015-LTS-MAR    Document 53    Filed 11/18/25    Page 6 of 19

## III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV. DISCUSSION

### A. *Walker's Objections*

Walker makes the following objections:

1. The R&R inaccurately describes the substance that was actually in the clear baggie (plastic clips with white powder residue), which undercuts the conclusion that there was probable cause for seizure of Walker's vehicle

2. The R&R does not account for the 18-hour delay in applying for a search warrant and whether the delay to tow and seek a warrant undermines the "ready mobility" rationale of the automobile exception.

3. Contrary to the R&R, the evidence suggests the incriminating nature of the baggie was not immediately apparent and combined with the unexplained delay in towing and seeking a warrant, undermines the automobile and plain view justifications

5.[4] The conclusion that officers had probable cause to seize the vehicle based on events that occurred after the initial stop and shortly before Gorda's arrival

6. The conclusion that Walden concluded the baggie could contain an illegal narcotic based on his training and experience

7. The sequence of events.[5]

8. The conclusion that "both officers observed the baggie in plain view on the dashboard." Doc. 44 at 15.

9. The lack of analysis regarding the seizure of Walker's keys

Doc. 50 at 2-11. He argues there was a lack of probable cause to justify seizure of his vehicle because (1) there was no evidence that officers suspected him of drug use, (2) too

---

[4] There is no labeled fourth objection. *See* Doc. 50 at 3-5.

[5] Walker discusses the sequence of events but does not explain his actual objection to the R&R with regard to this evidence, except that if the vehicle had not been improperly towed, it would have been removed and not subject to the subsequent search warrant. In any event, I have accounted for the sequence of events in addressing his other objections.

8

much weight was given to Walker's criminal history and (3) the circumstances surrounding the observation of the baggie are suspect. Walker argues the seizure of his vehicle and delay in obtaining a warrant were unreasonable under the circumstances, particularly because after assuring Walker that he would be able to retrieve his vehicle the next day, the officers seized the vehicle and then waited another 18 hours to apply for a warrant.

### B. *Analysis*

Walker's objections focus on whether there was probable cause to seize the vehicle, which is the same basis for the subsequent search warrant. His objections fall into three categories: (1) circumstances surrounding the observations of the baggie on the dashboard, (2) the delay in getting the search warrant after the seizure of the vehicle and (3) other factors including the timing of events, purpose of the stop, Walker's criminal history and the seizure of Walker's keys. I will discuss each category in turn.

#### 1. *The Baggie*

Walker has several objections that relate to the officers' observation of the clear plastic baggie that he argues affect the probable cause analysis. These include the actual contents of the baggie, whether the incriminating nature was immediately apparent, whether Walden could conclude the baggie could contain an illegal narcotic based on his training and experience and whether the officers actually made a plain view observation. With regard to the actual contents of the baggie, Walker argues Judge Roberts' conclusion that officers "actually recovered a baggie with white powder," Doc. 44 at 11, is

9

inaccurate because the baggie was reported to contain "plastic clips with white powder residue."[6]

Regardless of the presence of plastic clips, the record is undisputed that there was white powder or white powder residue within the baggie. In any event, it is not the actual contents of the baggie that matter, but what the officers observed from outside the vehicle and whether that was sufficient to support probable cause. The photos of the baggie in Defense Exhibits D-I do not give a clear picture of what the officers observed due to the lighting and marks on the windshield. In the video evidence, Walden can be heard saying he could see the substance, but that it was difficult to capture on camera. Defense Exhibit C-1. He described it as "a plastic baggie with what appears to be a white substance in it." *Id*. When he and Jones initially went back to the vehicle, Walden can be heard saying "yeah, it's a bag of white powder" and "it's definitely a bag of white powder." Gov. Exhibit 2. He then pulled his vehicle up next to the truck to get a better view of the dashboard and can be heard saying "it's a baggie of white powder" and that it is "really hard to tell what that is." *Id*. Walden knew of Walker's drug history at this point. *Id*. Jones explained that he could see it better when the passenger window was down but could not identify whether it was white powder or crystal. *Id*.

The evidence establishes that the officers could observe a baggie with white powder from outside the vehicle and that the baggie recovered from the vehicle had white powder in it. While the baggie may have contained other items, such as plastic clips, that has little to no effect on the probable cause analysis that was focused on the presence of the white powder. This objection is overruled.

Next, Walker objects to Judge Roberts' conclusion that the incriminating nature of the baggie was immediately apparent to Jones and Walden. He cites the body camera

---

[6] During the hearing, Walker's attorney suggested that the powdery substance was Gold Bond powder, a container of which officers found in the vehicle during execution of the search warrant. Doc. 45 at 35; Def. Ex. C-2.

evidence from when Jones and Walden returned to the vehicle in which Jones can be heard saying "it's even easier to see when the window was down, when I was looking" to which Walden responds "you for sure saw it earlier? Saw a white powder?" to which Jones responds "yes." Defense Exhibit C. When Walden asks if it was white crystal or white powder, Jones responds something to the effect of "[j]ust powder. I don't know. I don't have much experience, it was white, which is why I brought it up to you." *Id*. Walker emphasizes the fact that during the 21 minutes that Walden was interacting with Walker after the initial stop, including standing at the driver's door, he did not observe the baggie. Walker also questions the plain view observation, noting that the windows on Walker's vehicle were unlawfully tinted, for which Walker received a citation. He argues that when combined with the delay in towing, this evidence undermines the automobile and plain view justifications.

Judge Roberts concluded that the incriminating nature of the baggie was immediately apparent to Jones, even if he did not call it to Walden's more expert attention until later. Doc. 44 at 16-17. He noted that the incriminating nature of the white, powdery substance was immediately apparent to Walden after he observed it through the window and compared it to Jones' observation. *Id*. The fact that Walden did not make the observation during the stop does not mean that the incriminating nature of the baggie was not immediately apparent during his subsequent observation. Nor does Jones' delayed report to Walden mean the "immediately apparent" requirement was not met. The "immediately apparent" requirement does not refer to when the observation was made, but to whether the incriminating nature of the object was "immediately apparent" whenever the observation was made.

Based on the video evidence, it is beyond dispute that Walden observed the white powder. *See* Government Exhibit 2 (in which Walden's body camera shows him shining his flashlight on the dashboard of the pickup and saying "yeah, it's a bag of white powder" and "it's definitely a bag of white powder"). The incriminating character of an item is immediately apparent when police have "probable cause to associate the property

11

with criminal activity." *United States v. Banks*, 514 F.3d 769, 773 (8th Cir. 2008) (quoting *United States v. Raines*, 243 F.3d 419, 422 (8th Cir. 2001)). "To satisfy the 'immediately apparent' standard, it is not necessary that a law enforcement officer know with certainty that an item is contraband or evidence of a crime." *United States v. Murphy*, 261 F.3d 741, 743-44 (8th Cir. 2001) (citing *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990) (internal citation omitted)). Walden testified that he has been trained in the identification of narcotics and how they are transported, *see* Doc. 45 at 44-45, and based on his observations, thought drugs could be within the baggie. *Id.* at 33-34. Walker's objections related to Walden's observation of the baggie and his belief that it could have contained illegal narcotics based on his training and experience are overruled.

Walker's other objections question the extent to which the officers could have made a plain view observation based on the window tint. Again, the "immediately apparent" nature does not apply to the observation itself but to whether the incriminating nature of the object was immediately apparent. The fact that they had to use flashlights and that it was difficult to see inside the vehicle due to the window tint does not affect whether the incriminating nature of the contents of the baggie was immediately apparent. Despite the window tint, the video evidence reveals that Walden was still able to see enough into the vehicle to make a plain view observation of the baggie of the white powdery substance. He did not speculate as to whether it was white powder. Walker's objections related to whether the officers were able to make plain view observation are overruled.

### 2. *The Delay*

Walker argues the R&R does not account for the 18-hour delay in applying for the search warrant and argues that the delay to tow and seek a warrant undermines the "ready mobility" rationale of the automobile exception. Part of the rationale of the automobile exception is that because of an automobile's "ready mobility" there may not be time to

12

obtain a warrant. Thus, officers may seize a vehicle based on probable cause until they can obtain a warrant. *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) (citing *Chambers v. Maroney*, 399 U.S. 42, 50-51 (1970)). Walker argues those concerns were not present because there was no hazard or risk of removal, officers had previously assured Walker that he would be able to get his vehicle and told his friend, Gorda, that it could be moved.

With regard to whether or how the 18-hour delay factors into the analysis, Walker merely questions why Walden waited 18 hours to apply for the warrant but has not cited any law that such a delay made the search or seizure unlawful. While the "duration of the seizure pending the issuance of a search warrant must still be reasonable," *see United States v. Mays*, 993 F.3d 607, 616 (8th Cir. 2021) (quoting *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993)), "[t]here is unfortunately no bright line past which a delay becomes unreasonable." *Mays*, 993 F.3d at 616-17 (quoting *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012)). Reasonableness "is measured in objective terms by examining the totality of the circumstances." *Id.* (quoting *United States v. Farnell*, 701 F.3d 256, 261 (8th Cir. 2012)). The court must "balance the privacy-related and law enforcement-related concerns" implicated. *Id.* (quoting *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 20120). Private interests include considerations such as the significance of the interference with the person's possessory interest, the duration of the delay, whether the person consented to the seizure and the nature of the seized property. *Id*. Government interests to consider include the Government's legitimate interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time expected to prepare the application and other evidence proving or disproving law enforcement's diligence in obtaining the warrant. *Id.*

Here, the stop took place at approximately 1:45 am. on October 6, 2023. The stop ended in Walker's arrest for operating while intoxicated (OWI). Walker was put in a holding cell at approximately 3:06 a.m. While Walden was writing up charges, Jones

13

mentioned the baggie he had observed on the dashboard of the truck during the stop. At approximately 4:05 a.m., the officers returned to Walker's truck where they observed the baggie. The truck was towed to the police station at 5:00 a.m. Walden's shift ended at 7:00 a.m. Walker was released from custody at approximately 3:55 p.m. and Walden obtained a search warrant for the vehicle at approximately 11:15 p.m. The search took place approximately 15 minutes later. Walker went to the police department on October 14, 2023, to retrieve his truck, at which point he was arrested pursuant to warrants that had been issued as a result of the search of his truck. Doc. 39-1 at 14.

Walker relies heavily on the fact that his interest in his vehicle was substantial, as he is an out-of-state resident who was dependent on it for transportation to his home state and to work in Iowa. While the interference with Walker's possession of his vehicle may have been significant, the duration of the delay here was not. Walker was not released from custody until just before 4:00 p.m. The search took place a little over seven hours later. While the vehicle had been in police custody since about 5:00 a.m., there is nothing in the record explaining the delay except, perhaps, Walden's shift schedule, which ended at 7:00 a.m. and presumably picked up later again that day during which Walden obtained the search warrant.

With respect to other types of property, courts have found delays extending to 12 months for search of a seized cell phone[7] and up to 13 months for search of a seized

---

[7] *See United States v. Jones*, No. 23-cr10125-ADB, 2024 WL 4542929, at *4-*7 (D. Mass. Oct. 22, 2024) (finding four-month delay in obtaining search warrant for seized cell phone not unreasonable); *United States v. Ortega*, No. 21-CR-665, 2023 WL 2712533, at *5 (D.N.M. Mar. 30, 2023) (nine-month delay in obtaining search warrant for seized cell phone not unreasonable); *United States v. Davis*, No. 18-cr-20085-02, 2021 WL 4192045 (E.D. Mich. Sept. 15, 2021) (12-month delay in obtaining search warrant for seized cell phone not unreasonable).

computer[8] to be reasonable. Vehicles are unique because they are subject to the automobile exception, which means they may be searched without a warrant so long as there is probable cause to believe that the vehicle contains articles of criminal activity. *Chambers*, 399 U.S. at 48. Here, the officers had probable cause based on their observations of a baggie with a white powdery substance on the dashboard of the vehicle and their knowledge of Walker's criminal drug history. While this would have allowed them to search the vehicle on the side of the road, or once it had been towed to the police station, they opted to seize the vehicle and obtain a search warrant. Both methods are reasonable. *See Chambers*, 399 U.S. at 51-52 ("For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.").

However, Walker argues the delay in towing and getting a search warrant undermines the "ready mobility" rationale of the automobile exception. I disagree. First, there was no delay in towing the vehicle. The seizure of the vehicle was not based on the initial stop. It was based on Jones' report back at the police station that he had observed a baggie with a white powdery substance during the stop and Walden's subsequent verification of what Jones had observed. The vehicle was towed within an hour of Walden's observation of the baggie. The fact that Jones did not immediately report to Walden what he had observed during the stop does not undermine the probable cause determination. The incriminating object he had observed was still present in the vehicle when the officers returned to it on the side of the road and determined that it

---

[8] *United States v. Howe*, 545 F. App'x 64, 66 (2d Cir. 2013) (13-month delay in obtaining a search warrant for the search of a laptop computer was not unreasonable); *United States v. Christie*, 717 F.3d 1156, 1163-64 (10th Cir. 2013) (five-month delay in obtaining search warrant for seized computer not unreasonable).

should be towed pursuant to the automobile exception. Second, the record establishes that Gorda was in the process of determining how to retrieve the vehicle around the time it was towed. If he had reached it before Walden and Jones, the evidence in the vehicle would have been lost. This is precisely why the automobile exception exists.

I do not find the approximate 18-hour delay from the seizure until the search warrant was obtained to be unreasonable, particularly given the evidence of a shift change during this time and the absence of any evidence that the delay was for an improper purpose.[9] *See United States v. Whipple*, 92 F.4th 605, 613 (6th Cir. 2024) (concluding three-day delay between impoundment of vehicle and procurement of search warrant was reasonable). The delay in obtaining a search warrant after seizing Walker's vehicle did not amount to a Fourth Amendment violation. Walker's objections related to the delay in obtaining the search warrant are overruled.

### 3. Other Factors

Finally, Walker objects to the R&R's consideration (or lack thereof) of other factors that he contends affect the probable cause determination. These include the timing of events, the purpose of the stop, Walker's criminal history and the circumstances surrounding the seizure of Walker's keys. Walker argues that each of these factors in the context of the investigation undermines any probable cause to justify seizure of the vehicle.

Walker questions the timing of the seizure of the vehicle, noting that prior to going back to the scene, Walden had no intention to seize the vehicle. He notes Gorda testified that someone from the Meskwaki Police Department had told him he could move the vehicle. Walker emphasizes that there was no discussion of the baggie until after Walker

---

[9] *See* Doc. 45 at 38 ("Q: Why didn't you make application for a search warrant around 5:00 in the morning? A: My shift ended at 7:00, so I imagine that had something to do with it, but I don't recall specifics.").

16

had been detained and booked in the jail and officers had learned of his criminal history. He also notes he was arrested for OWI and Walden's report does not indicate he suspected Walker of being under the influence of anything other than alcohol. Walker does not specifically address the relevance of these facts or how he believes they affect the probable cause determination. *See* Doc. 50 at 7-9, 12-13. Nor does he cite any authority that the expansion of the investigation (from OWI to a drug investigation) based on Jones' observations was unlawful.

The Eighth Circuit has recognized that "[a]n investigative stop can grow out of a traffic stop so long as the officer has reasonable suspicion of criminal activity to expand his investigation, even if his suspicions were unrelated to the traffic offense that served as the basis of the stop." *United States v. Gomez Serena*, 368 F.3d 1037, 1041 (8th Cir. 2004) (citing *United States v. Long*, 320 F.3d 795, 799-800 (8th Cir. 2003)). It was reasonable for officers to expand the scope of their investigation once Walden was made aware of Jones' observation during the stop and upon making the plain view observation of the baggie from outside the vehicle. The drug investigation did not unreasonably prolong the stop as the purpose of the stop (OWI investigation) had already been accomplished and Walker had been booked into the jail. While the vehicle could have been moved between the time that Walker was arrested and Jones informed Walden of his observation, it was not. This allowed the officers to continue their investigation based on Jones' observation. Walker's objections related to the timing of events and purpose of the stop are overruled.

With regard to Walker's criminal history, Walker notes that Judge Roberts factored in Walker's criminal history as part of the totality of the circumstances analysis but contends that he weighed it improperly because it has to be a factor at the time of arrest or seizure and not later investigative developments. *See* Doc. 50 at 14 (citing *Children v. Burton*, 331 N.W.2d 673, 680 (Iowa 1983)). He contends that the stop gave Walden no reason to suspect Walker of any drug involvement. Judge Roberts reasoned that there was probable cause to seize the vehicle based, in part, on Walker's criminal

17

history. Doc. 44 at 10. Specifically, he observed that Walker admitted to having a felony drug conviction in Colorado and discussed this with the officers. *Id.* (citing Gov. Ex. 1 at 48:13-49:14, 53:31-54:07, 1:05:00-1:09:02; Gov. Ex. 3). Government Exhibit 1 demonstrates that Walden learned of Walker's criminal history prior to seizure of the vehicle and thus, it was appropriately considered as a factor in determining whether there was probable cause to seize the vehicle. Walker's objections related to consideration of his criminal history in the probable cause analysis are overruled.

Finally, Walker argues the R&R ignores contradictory and irreconcilable evidence concerning his vehicle keys. He notes that Walden testified he placed Walker's keys into an evidence bag at the roadside before transport to the jail, but the property receipt from the jail does not include any keys. He then refers to Walden's report, in which Walden indicated he retrieved the keys from Walker's property and left him a seized property receipt. Without a documented chain of custody for the keys, Walker argues the Government cannot establish that the vehicle remained sealed and was not accessed during the 18-hour delay prior to the warrant. He contends this discrepancy undermines Walden's credibility and the reliability of the Government's evidence.

This objection is unsupported and speculative. Walden testified that he took Walker's keys and put them in an evidence bag, not because they were evidence of something but to hold them for Walker until he was released. Doc. 45 at 47-48. Walker has submitted only a seized property receipt (Doc. 39-5) for the vehicle and a property control report (Doc. 39-6) following the search of his vehicle. These reports do not relate to personal property that was taken from Walker while he was booked in the jail and Walker has not provided any such log of personal property from the jail. In any event, the evidence does not suggest any nefarious conduct regarding Walker's keys. It shows that Walden put Walker's keys in an evidence bag to take them back to the jail to keep with his other personal belongings. After officers returned to the scene and made their observations of the baggie that Jones had observed, they decided to seize the vehicle and apply for a search warrant. At that point, Walden removed Walker's keys from his

18

personal belongings and left him a seized property receipt (as they were now tied to evidence that officers were holding pending a search warrant). While that seized property receipt is not in the record, its absence alone is insufficient to raise concerns about the propriety of the search and certainly does not affect the probable cause analysis as to the seizure of the vehicle. This objection is overruled.

Overall, the totality of the circumstances demonstrate that the officers had probable cause to seize the vehicle for the reasons found by Judge Roberts: signs of impairment they observed during the stop, Walker's criminal history and the plain view observation of the baggie. Additionally, while not challenged in Walker's objections, I agree with Judge Roberts that it was objectively reasonable for the officers to rely on the search warrant pursuant to *Leon*.

## V. CONCLUSION

For the reasons set forth herein:

1. Walker's objections (Doc. 50) to the Report and Recommendation (Doc. 44) are **overruled**;

2. I **accept** the Report and Recommendation (Doc. 44) without modification;

3. Pursuant to the Report and Recommendation, Walker's motion (Doc. 31) to suppress evidence is **denied**.

**IT IS SO ORDERED** this 18th day of November, 2025.

_____
Leonard T. Strand
United States District Judge